[No. 1727, December 10, 1915.]
STATE v. PERKINS et al.

SYLLABUS BY THE COURT.

1. The instruction approved by the territorial Supreme Court in the case of Territory v. Livingston, 13 N. M. 318, 84 Pac. 1021, as to the interest of the defendant in the result of the case adopted as a correct statement of the law.

P. 138

2. The preferable instruction defining "reasonable doubt," in this jurisdiction, is as follows: "A 'reasonable doubt' is such a doubt as would cause a reasonable and prudent man in the graver and more important affairs of life to pause and hesitate to act upon the truth of the matter charged. But a reasonable doubt is not a mere possibility of innocence, nor a caprice, shadow, or speculation as to innocence not arising out of the evidence or the want of it. You should carefully weigh and consider the evidence, and bring to bear upon it the exercise of common sense and judgment as reasonable men, and if, after considering all the evidence, you can say you have an abiding conviction of the truth of the charge, then you are satisfied beyond a reasonable doubt."

P. 138

3. A witness may be impeached, not only by his contradictory or inconsistent statements, but also by proof that on a former occasion, under circumstances where it was his duty to state the whole truth, he omitted to state material and relevant facts which he now states.

P. 139

4. There are three sorts of evidence that may be introduced to impeach a witness: First, evidence relating to his character and directly tending to show that the witness lacks truthfulness; second, evidence showing that on former occasions, when purporting to fully narrate the facts, he neglected to state material facts testified to by him on the present occasion; third, evidence showing that his tes-

timony on the present hearing materially varies from the acts done or statements made by him on other occasions.

P. 141

5. Where a witness testifies to facts, his acts manifesting a belief in the existence of a variant state of facts may be shown.

P. 143

6. Proof of the witness' particular overt acts of wrongdoing are ordinarily relevant as impeaching evidence, but such acts can never be shown by any evidence outside the examination of the assailed witness, and the extent of such examination rests largely in the discretion of the trial court.

P. 144

7. Under section 2180, Code 1915, "the credit of a witness may be impeached by general evidence of bad moral character not restricted to his reputation for truth and veracity," and it is error for the trial court to limit such testimony to the question of the reputation of a witness for truth and veracity.

P. 145

Appeal from District Court, Torrance County; E. L. Medler, Judge.

Josiah Perkins and others were convicted of assault with intent to kill, and appeal. Reversed and remanded, with directions to award new trial.

E. A. MANN and ISAAC BARTH of Albuquerque, for appellants.

Instruction 10 singles out defendants and is therefore erroneous.

Hicks v. U. S., 150 U. S. 442; 12 Cyc. 609; sec. 2994. C. L. 1897; Territory v. Livingston, 13 N. M. 318.

The reasonable doubt instruction was erroneous.

State v. Perkins, 21 N. M. 135.

State v. Cohen, 108 Iowa, 208, 75 Am. St. R. 213; Morgan v. State, 27 N. E. 710; State v. Sauer, 38 N. W. 355; People v. Steubenvoll, 28 N. W. 833; Klyce v. State, 28 So. 827; Avery v. State, 27 So. 505; Cowan v. State, 35 N. W. 405; Carr v. State, 37 N. W. 630; Silberry v. State, 33 N. E. 681.

Instruction as to modes of impeachment incorrect.

State v. McKinney, 3 Pac. 356; Hicks v. U. S., supra; Comm. v. Harrington, 152 Mass. 488; State v. Armstrong, 43 So. 57; Brown v. State, 79 Ala. 61. Also 7 Enc. Ev. 17; sec. 3024, C. L. 1897; Territory v. Clark, 99 Pac. (N. M.) 697; Faulkner v. Territory, 6 N. M. 464.

As to showing reputation of witness, see:

Lawson v. State, 32 Ark. 220; Holmes v. Statler, 17 Ill. 453; Davis v. Comm., 95 Ky. 17; Buse v. Page, 19 N. W. 736; State v. Lanier, 79 N. C. 622; 7 Ency. of Evidence, 163; Pape v. Wright, 11 Ind. 502; Easter v. People, 32 Mich. 434; Brown v. Perez, 34 S. W. 725.

IRA L. GRIMSHAW, Assistant Attorney General, for the State.

Defendant may rightly be placed on different footing than ordinary witness.

Sec. 2445, Brick-Sack- Insts.; 11 Enc: P. & P. 315, 317; State v. Cook, 84 Mo. 40½; People v. Morrow, 60 Cal. 142; People v. O'Neal, 65 Cal. 77; People v. Wheeler, 76 Cal. 378; People v. Knapp, 71 Cal. 10; Rider v. People, 110 Ill. 11; St. Louis v. State, 8 Neb. 416; Territory v. Taylor, 11 N. M. 588.

No proper exception was taken to reasonable doubt instruction.

Previous silence as method of impeachment, see:

Underhill Crim. Ev., sec. 242; Dickerson v. Dickerson, 50 Mich. 37; Wheeler v. Van Sickle, 37 Neb. 651; State v. Ogden, 39 Oreg. 195; Lewis v. State, 15 Tex. App. 647.

Cross-examination as to previous silence greatly within discretion of court.

;Wyman v. L. V. R. Co., 158 Fed. 957; Beckner v. Hayes, 29 Fed. 441; Briggs v. Taylor, 35 Vt. 55.

For full discussion as to right to cross-examine on particular misconduct of witness to impeach his credibility, see:
Wigmore on Ev., p. 114 et seq.

As to right to show prior character or reputation, see:
2 Wigmore on Ev., p. 1067 et seq.

## OPINION OF THE COURT.

ROBERTS, C. J.—Appellants were indicted, tried, and convicted in the district court of Torrance county of having assaulted with intent to kill one Josephine Knapp. From the judgment sentencing them to the penitentiary, they appealed, and, the Attorney General confessing error, the cause was reversed and remanded for a new trial. Upon the second trial they were again convicted and sentenced, and prosecute this appeal.

[1] Many alleged errors are assigned, not all of which need be considered, as the practice in this jurisdiction is already well settled as to the points discussed, and attention to the prior decisions will enable the trial court and the parties to avoid a repetition of error where error was committed. For example, the court instructed the jury that, in order to determine what weight should be given the testimony of the defendants in arriving at their verdict, they should take into consideration the defendant's interest in the result of the case. In the case of Territory v. Livingston, 13 N. M. 318, 84 Pac. 1021, the law on this question is discussed, and an instruction given by the trial court approved. By conforming to such approved instruction, and the principles therein enunciated, all possibility of error will be obviated.

[2] Appellants also contend that the instruction given by the court on reasonable doubt is erroneous. That instruction, in part, was to the general effect that a "rea-

sonable doubt" was one based on reason, and which is reasonable in view of all the evidence. That instruction was approved by the Supreme Court of the United States in the case of Hopt v. Utah, 120 U. S. 431, 7 Sup. Ct. 614, 30 L. Ed. 708, but, as there was no proper exception taken to the instruction in the case at bar, it is unnecessary for us to determine whether the given instruction was correct or not. The following instruction on reasonable doubt we consider preferable in this jurisdiction:

"A 'reasonable doubt' is such a doubt as would cause a reasonable and prudent man in the graver and more important affairs of life to pause and hesitate to act upon the truth of the matter charged. But a reasonable doubt is not a mere possibility of innocence, nor a caprice, shadow, or speculation as to the innocence not arising out of the evidence or the want of it. You should carefully weigh and consider the evidence, and bring to bear upon it the exercise of common sense and judgment as reasonable men, and if, after considering all the evidence, you can say you have an abiding conviction of the truth of the charge, then you are satisfied beyond a reasonable doubt."

[3] The court instructed the jury that a witness may be impeached by showing that statements made out of court are contradictory of, and inconsistent with, his testimony on the trial of the cause concerning material matters, and by proof of bad character for truth and veracity. Appellants requested that the jury be instructed that a witness might also be impeached by proof of omissions of material and relevant facts in a former proceeding wherein the witness was sworn to tell the whole truth and nothing but the truth. It is a well-settled rule that a witness may be impeached, "not only by his contradictory or inconsistent statements, but also by proof that on a former occasion, under circumstances where it was his duty to state the whole truth, he omitted to state material and relevant facts, which he now states." Underhill on Criminal Evidence, § 242; 1 Thompson on Trials, § 503; 40 Cyc. 2705. When an instruction properly containing the doctrine last mentioned is tendered to the court, and is properly applicable to the facts of the case, the court is bound to instruct the jury thereon.

Complaint is made of the instruction given by the court of its own motion concerning the defense of alibi. This question is thoroughly discussed in the recent case of State v. Smith, 153 Pac. 256, decided at the present term of this court, and nothing more need be said in this regard.

On the trial of the case there was evidence introduced by witnesses for the state, tending to establish the following facts: About 11 o'clock of the night of August 18, 1909, four horsemen rode up to the fence of the Kubena family, residents of Mountainair, and neighbors of Mrs. Knapp. One dismounted and posted a notice on the Kubena gate. The notice contained a threat to the effect that the Kubenas must leave the country within 24 hours or suffer the consequences, which they intended Mrs. Knapp to suffer. Those consequences were stated to be "shooting up of the Kubena home as we did Mrs. Knapp." The four horsemen, whom Mrs. Kubena described as Noble, George Dunn, John Dunn, and one of the Lee boys, then rode east into a standing of timber, dismounted, and were joined by four other men named Perkins, Griffin, Joiner, and Freak. These eight men then advanced toward the Knapp house and discharged a volley of shots at and towards that house. After the firing had ceased, Mrs. Knapp, who was occupying a bed in the northwest part of the house, arose, dressed, and went outside. She followed two men to the building occupied by Perkins as an office and home, where she overheard a conversation wherein Griffin asked whether they had killed Mrs. Knapp, and Perkins responded by saying that they would find out in the morning. Griffin then left the Perkins building, and Mrs. Knapp returned home. The Knapp residence was riddled with bullets, all entering about five to seven feet from the level of the floor. Upon the trial Mrs. Knapp testified that she recognized and identified two of the defendants on the night of the alleged assault, and the evidence shows that she knew them at that time, and had known them for some time prior to the occurrence. She was a very important witness for

the state. The appellants sought to impeach her testimony in various ways. The seventeenth assignment of error is based on the refusal of the court to allow testimony offered by appellants tending to impeach the credibility of Mrs. Knapp.

[4] "There are three sorts of evidence that may be introduced to impeach a witness: First, evidence relating to his character and directly tending to show that the witness lacks truthfulness; second, evidence showing that on former occasions, when purporting to fully narrate the facts, he neglected to state material facts testified to by him on the present occasion; third, evidence showing that his testimony on the present hearing materially varies from the acts done or statements made by him on other occasions." 7 Ency. of Evidence, 17.

The law in New Mexico as to impeachment of a witness is found in section 2178, Code 1915:

"If a witness, upon cross-examination as to a former statement made by him relative to the subject-matter of the cause, and inconsistent with his present testimony, does not distinctly admit that he did make such statement, proof may be given that he did in fact make it, but before such proof can be given the circumstances of the supposed statement, sufficient to designate the particular occasion, must be mentioned to the witness, and he must be asked whether or not he did make such statement."

In the bill of exceptions, in the testimony of Mrs. Knapp, we find the following:

"Q. Is it not a fact that in the court of Judge Fuller, at the preliminary examination of Lee, who was charged with this offense, that you testified that you didn't know who had shot into your house? Mr. Hamilton: Objected to as immaterial. The Court: Objection overruled. A. No, sir. Q. What do you mean by that; that you didn't tell it? A. Yes, sir. Q. And that you didn't say that you didn't know who shot into your house; is that the idea? A. I didn't say it."

And further:

"Q. I will ask you if it is not a fact that some time about February, 1910, you met Mrs. Cavens in the parlors of the Darras Hotel, at Willard, N. M., and that you had a conversation with her about this occurrence, in which you

asked her if her husband, Judd S. Cavens, didn't know who had shot up your house, and if you didn't tell Mrs. Cavens that you had no idea who shot up your house, that you were so badly frightened that you laid down flat on the floor and that, if you had not been so badly frightened. you would have gone outside and to the house of Josiah Perkins, and that you so stated that, if you had done so, you would have found both Mr. Perkins and Griff [meaning J. H. Griffin] gone? Mr. Hamilton: Objected to. If it is for the purpose of impeachment, I don't think the time is sufficiently stated. Mr. Mann: I am not done with the question. * * * Q. And that you were afraid to go outside for fear the unknown parties were still standing around and might shoot you. Mr. Hamilton: If the question is for the purpose of impeachment, it does not sufficiently fix the time. The Court: He says about February. He can call attention to any time in February. That is sufficient. The objection is overruled. A. No."

And again:

"Q. I will ask you if it is not a fact that on the morning of August 19, 1909—about two days after the 19th—you didn't meet Mr. Cavens in Mountainair, N. M., and if you didn't ask him if he knew the whereabouts of one Nye, and if he didn't tell you he had gone to the mountains, or that he thought he had gone, and didn't you ask him if he had no idea who it was who shot up your house, and that he told you he didn't, and you then asked him if he thought Charles A. Noble, Josiah Perkins, J. H. Griffin, R. W. McCoombs, the Dunns and Lees had done it, and he told you 'No,' he thought not, and you then said you didn't think so either? Is that the truth or not? A. No, sir. Q. And then didn't you ask him if he knew any Mexicans that he thought might have done it? A. No, sir. Q. And did you not then say that you didn't know who did it, but that you were going to find out? A. No, sir."

Clearly, the foundation was properly laid as required by the statutes, the question asked and allowed by the court, and the witness denied making the statements, and still the court refused offers of appellants to prove that the witness Mrs. Knapp had made the very statements that she denied making. In addition to that, we find the question asked of Mrs. Knapp if she did not ask Mr. McCoombs, in the presence of Mr. Cummings, at Mountainair, N. M., on the morning after the alleged shooting, to go out to Priest's Canyon and get a man by the name of Nye, saying that the witness had said that Nye knew

who did the shooting, and that she wanted Nye to tell her who it was that shot up her house, and the court refused to allow the question to be answered, over the objection of appellants, and denied the offer of appellants to prove those statements by the witness Mrs. Knapp. And throughout the record can be found other instances wherein is shown that the court denied appellants their statutory right to impeach the testimony of the witness for the state by proof of inconsistent statements made prior to the trial, which undoubtedly was prejudicial to appellants and was reversible error. With particular force does this apply to the proof of the testimony given by Mrs. Knapp in Judge Fuller's court a few days after the crime was committed, and also to the act of swearing out complaints and statements made on oath in the complaints which were sworn to by Mrs. Knapp within a day or two after the crime was committed, charging one Nye and one Charles Lee with the offense, and the further fact that no complaints were filed against appellants or either of them for a year after the alleged crime was committed.

[5] It is also clearly established that a witness' acts variant from his testimony on the stand may be shown to impeach him.

"Where a witness testifies to facts, his acts manifesting a belief in the existence of a variant state of facts may be shown." 7 Ency. of Evidence, 149.

This is the general rule, but it does not need any supporting authority.

The witness Knapp testified that she knew on the night of the shooting that appellants Perkins and Griffin had done the shooting. Appellants offered to show variant acts of hers showing that within a day or two after the shooting she swore out complaints against one Nye and one Lee charging them with the offense; that she did not, nor did any one else, make any accusation against appellants until a year after, and the court refused to admit proof of that fact, being consistent in its refusal to allow the state's witness to be impeached. It is also

clearly established that, when a witness whose duty it is to speak and disclose a certain fact within his knowledge fails to do so, his omission becomes significant, and raises a presumption that the fact had not transpired or was not known to him, and therefore a witness may be impeached by proof of such omission.

It is stated in volume 7, Ency. of Evidence, p. 154, that:

> "Where the assailed witness was under no obligation to speak, yet might naturally have been expected to speak, in most jurisdictions his omission becomes significant."

It would naturally be expected that the prosecuting witness would file information against all persons known to her to have participated in the alleged crime against her. The fact that she filed such information against Lee and Nye, and omitted to prefer charges against Perkins and Griffin, was a fact which should have gone to the jury, for, naturally, it would be supposed that, if she had known at that time that Perkins and Griffin participated in shooting up her house, she would have preferred charges against them also. She could, of course, on redirect examination, have accounted for her failure so to do, if possible, and after the facts were before the jury they could give to such circumstances the weight to which it was entitled.

[6] Complaint is also made of the refusal of the trial court to permit the appellants, on cross-examination of Mrs. Kubena, a very important witness for the state, to ask the witness as to specific acts of wrongdoing on her part. The same is true of the prosecuting witness, Mrs. Knapp. The law in this jurisdiction was settled by the territorial Supreme Court in the cases of Territory v. Chavez, 8 N. M. 528, 45 Pac. 1107; Borrego v. Territory, 8 N. M. 446, 46 Pac. 349; and Territory v. De Gutman, 8 N. M. 92, 42 Pac. 48. There is a sharp conflict in the authorities upon this question, but, as the territorial Supreme Court has adopted the rule that proof of a witness' particular overt acts of wrongdoing are ordinarily relevant as impeaching evidence, but that such acts can never be shown by any evidence outside the examination

of the assailed witness, and that the extent of such examination rests largely in the discretion of the trial court, we can see no good reason to depart from the rule of practice thus established. Careful attention to the cases cited will enable the trial court to avoid error in this regard upon a subsequent trial.

[7] The appellants sought to impeach the credit of Mrs. Knapp by general evidence of bad moral character. Several witnesses were produced by whom appellants offered to prove the general reputation of the witness for bad moral character in the neighborhood in which she resided. The court refused such evidence, and informed counsel for appellant that they could only prove her reputation for truth and veracity. In the absence of statute, this is the correct rule, but in this state we have a statute (section 2180, Code 1915) which expressly permits the credit of a witness to be impeached by general evidence of bad moral character. That portion of the statute material here reads as follows:

"The credit of a witness may be impeached by general evidence of bad moral character not restricted to his reputation for truth and veracity."

In view of this statute, the action of the court in excluding the proffered evidence was clearly erroneous.

Albert Kubena testified as a witness for the state. His evidence was very damaging to the defendants. At the time of the commission of the alleged crime, he resided in Mountainair, and continued to live there until about two years before the trial, at which time he removed to the state of Oklahoma. The appellants sought to prove that he had a bad reputation for truth and veracity in the neighborhood of Mountainair at the time he left there, two years preceding the trial. The trial court held that it was not competent for them to do so, but that such proof could only go to his reputation at the time of the trial. The exclusion of this evidence was clearly erroneous.

Wharton on Criminal Evidence, p. 1007, lays down what he considers the majority rule, to the effect that prior

character at any time may be admitted as relevant to show present character. Mr. Wigmore, in volume 2 of his work on Evidence, pp. 1067, 1068, says:

"On principle, the correct solution seems to be that prior character at any time may be admitted as being relevant to show present character, and therefore indirectly to show the probability as to truth speaking. The only limitation to be applied would be that applicable to all use of a former condition to show the present one; * * * i. e., that the character must not be so distant in time as to be devoid of real probative value in showing present character; this limitation to be applied in the discretion of the trial court."

This question will be found fully discussed in a case note to the case of People v. Mix, 12 Ann. Cas. 393. The authorities there collected clearly show that the proffered evidence was admissible. As we have discussed the only errors apparent in the record, the remaining points made need not be considered.

For the reasons stated the cause must be reversed and remanded, with directions to the trial court to award the appellants a new trial; and it is so ordered.

HANNA and PARKER, J.J., concur.