2008-NMSC-060

195 P.3d 1232

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Kenneth MARTINEZ, Defendant–Respondent.**

**No. 30,269.**

Supreme Court of New Mexico.

Oct. 9, 2008.

Gary K. King, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Petitioner.

Hugh W. Dangler, Chief Public Defender, Navin H. Jayaram, Assistant Appellant Defender, Santa Fe, NM, for Respondent.

## OPINION

DANIELS, Justice.

{1} In this case, we address the conceptually distinct, but often confusing, rules regulating admissibility of character testimony (1) as substantive evidence of relevant out-of-court conduct of a criminal defendant under Rule 11–404(A)(1) NMRA, and (2) as impeachment and rehabilitation evidence relating to testimonial credibility of any witness, including a defendant, under Rule 11–608(A) NMRA. The Court of Appeals determined that the district court erroneously excluded Rule 11–404(A)(1) evidence of Defendant's character for honesty and truthfulness as substantive evidence in his trial for burglary solicitation. We affirm the result reached by the Court of Appeals, and we therefore remand to the district court for a new trial.

## I. BACKGROUND

{2} Defendant Kenneth Martinez had a history of working as a paid police informant. At the request of the police, he agreed to aid in the arrest of Arturo Torres, a man suspected of involvement in an armed burglary committed by three men in Silver City. Defendant's help consisted of luring Torres out of a hiding location by feigning his interest in buying drugs from Torres. After Torres was arrested, he gave a statement accusing Defendant of having solicited him to commit the very burglary for which Defendant had helped the police arrest Torres. Torres claimed that Defendant had provided detailed information about a house he wanted burglarized that purportedly had drugs, money, and guns in it. On the basis of Torres's disputed account and his subsequent immunized testimony, Defendant was arrested, tried by a jury, and convicted of criminal solicitation to commit aggravated burglary, contrary to NMSA 1978, Section 30–28–3 (1979).

{3} It was the State's theory that Defendant had solicited Torres to burglarize the home of Marilyn Berry, Defendant's future mother-in-law, but that Torres and his two accomplices mistakenly had burglarized the house across the street. In support of that theory, the State called Berry to testify about the acrimonious circumstances related to Defendant's having been compelled to move out of the Berry home shortly before the burglary. Although the circumstantial evidence presented by the State provided substantial support for its theory, the verdict ultimately depended on which of the two competing versions of reality presented by Torres and Defendant the jurors chose to accept as historical fact.

{4} During pretrial discovery, Defendant had filed a defense witness list containing the names of five character witnesses. The State made a pretrial motion in limine to exclude the witnesses, but the district court deferred making a final ruling on the motion until trial in order to see how the case developed.

{5} After the State rested its case-in-chief at trial, the district court revisited the State's motion in limine. Defense counsel represented that the witnesses would offer character testimony that Defendant was an honest and truthful person, both to show that he was not the kind of person who would have been likely to be involved in a burglary and to show that his testimony would be worthy of belief when he took the stand to contradict the testimony of Torres. The State argued that none of the proposed character testimony related to a trait of character pertinent to the charged crime of criminal solicitation and that Defendant was not entitled to present credibility evidence until after he took the stand and his character for truthfulness had been attacked. The district court agreed with the arguments of the State, ruling that no character testimony could be presented by Defendant as substantive evidence of innocence because he was "not accused of burglarizing anything, he was accused of asking someone [else] to do it." The district court acknowledged that Defendant could offer his character evidence after he testified, if the State mounted an attack on his character for truthfulness. The State successfully avoided opening that door, and the jury never heard the testimony of Defendant's character witnesses.

{6} The Court of Appeals reversed and remanded for a new trial, holding that honesty and truthfulness are pertinent character

traits that are admissible under Rule 11–404(A)(1) in a prosecution for solicitation to commit burglary. *State v. Martinez*, 2006–NMCA–148, ¶ 1, 140 N.M. 792, 149 P.3d 108.

{7} We granted certiorari to review the State's arguments (1) that the Court of Appeals was incorrect as a matter of law in determining that those character traits are pertinent to a charge of solicitation to commit burglary, and (2) that the Court of Appeals should have used an abuse of discretion rather than a de novo standard in reviewing the district court's decision. We first address the proper standard of review.

## II. STANDARD OF REVIEW

 {8} The standard of appellate review of a trial court's ruling regarding admission or exclusion of evidence is necessarily dependent on the nature of the decision made by the trial court. If it is an exercise of discretion dependent on the facts of the particular case, such as balancing prejudice against probative value or drawing the line with regard to potentially cumulative evidence, the proper standard is abuse of discretion. *See State v. Burkett*, 30 N.M. 382, 388, 234 P. 681, 684 (1925) (holding that a trial court's limitation on the number of character witnesses is reviewable under an abuse of discretion standard); *Michelson v. United States*, 335 U.S. 469, 480, 69 S.Ct. 213, 93 L.Ed. 168 (1948) (same); *State v. Otto*, 2007–NMSC–012, ¶ 16, 141 N.M. 443, 157 P.3d 8 (holding that the trial court did not abuse its Rule 11–404(B) discretion in admitting evidence of uncharged sexual contact between defendant and child victim); *State v. Stanley*, 2001–NMSC–037, ¶ 24, 131 N.M. 368, 37 P.3d 85 (holding that the trial court abused its discretion under Rules 11–401, 402, 403, and 404 in excluding evidence of suicidal tendencies of decedent in a murder prosecution where suicide was a defense theory); *State v. Saavedra*, 103 N.M. 282, 283–84, 705 P.2d 1133, 1134–35 (1985) (holding that the trial court abused its discretion in excluding evidence of commission of similar robberies by a third person, where the defense theory was that the third person committed the robbery).

{9} The standard is different if the issue " 'requires us to consider legal concepts in the mix of fact and law and to exercise judgment about the values that animate legal principles.' " *State v. Attaway*, 117 N.M. 141, 144, 870 P.2d 103, 106 (1994) (quoting *United States v. McConney*, 728 F.2d 1195, 1202 (9th Cir.1984)). In such cases, " 'the question should be classified as one of law and reviewed de novo.' " *Id.*

 {10} "Generally speaking, a reviewing court defers to the trial court's decision to admit or exclude evidence and will not reverse unless there has been an abuse of discretion. However, our review of the application of the law to the facts is conducted de novo." *State v. Elinski*, 1997–NMCA–117, ¶ 8, 124 N.M. 261, 948 P.2d 1209 (applying de novo standard of review and reversing where the trial court's admission of specific acts of decedent's violence was premised on a misapprehension of the law) (citation omitted). A misapprehension of the law upon which a court bases an otherwise discretionary evidentiary ruling is subject to de novo review. *N.M. Right to Choose/NARAL v. Johnson*, 1999–NMSC–028, ¶ 7, 127 N.M. 654, 986 P.2d 450; *see State v. Torres*, 1999–NMSC–10, ¶ 28, 127 N.M. 20, 976 P.2d 20 (holding that a conclusion is one of law if a rule must be applied before a conclusion is reached).

 {11} In this case, the district court made a categorical interpretation of law, not dependent on the facts of the particular case, in concluding that evidence of honest and truthful character is inadmissible as a matter of law in a prosecution for solicitation to commit burglary. We agree with the Court of Appeals that the proper standard for review of that legal conclusion is de novo.

## III. DISCUSSION

### A. Theories Underlying Admissibility of Character Evidence

{12} The admissibility of character testimony is regulated in two separate areas of our New Mexico Rules of Evidence: in the relevancy rules of Article 4 and in the witness rules of Article 6. Both of those areas are implicated in the issues presented in this case, which call on us to address the admissibility of character testimony as circumstan-

tial evidence of relevant conduct under Rule 11–404(A)(1) (providing for admission in a criminal case of "[e]vidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same"), as well as the admissibility of character testimony as circumstantial evidence of credibility of a witness under Rule 11–608(A) (providing that "[t]he credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation . . . [regarding] character for truthfulness or untruthfulness . . . after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise"). The two inquiries are founded on the same underlying beliefs about the relationship between character and conduct, but their uses involve different policy considerations and different rules of application.

{13} Courts and commentators have observed that these uses of character evidence are often misunderstood in their own applications and are frequently confused with one another. *See Michelson*, 335 U.S. at 485, 69 S.Ct. 213 (observing that the rules regarding use of character trait evidence "are such that even lawyers and judges, after study and reflection, often are confused"); *United States v. Cudlitz*, 72 F.3d 992, 995–96 (1st Cir.1996) ("The main reason is that they represent not a logical pattern but a series of ad hoc accommodations arrived at by the common law over the course of centuries in dealing (differently) with several related problems."); Miguel Angel Méndez, *The Law of Evidence and the Search for a Stable Personality*, 45 Emory L.J. 221, 221 (1996) (observing that character evidence is still "[o]ne of the most misunderstood and confusing aspects of the law of evidence" for students, judges, and scholars alike).

{14} This case is an illustrative example. The record reflects confusion by counsel on both sides, by the district court, and by the Court of Appeals as to the differing purposes and applications of the separate admissibility of character testimony as substantive evidence and as witness credibility evidence. To aid in understanding and clarification, we first review the theories, history, and purposes relating to their admissibility.

{15} A review of the development of character evidence shows that its use extends further back into our legal history than even such fundamental rights as those of an accused to testify or to have the assistance of counsel. The theory underlying the relevance of character evidence is based on our common human experience that "[t]he character . . . of the persons we deal with is in daily life always more or less considered by us in estimating the probability of their future conduct." 1A Wigmore, *Evidence* § 55, at 1159 (Tillers rev.1983). In one of the oldest scraps of papyrus to survive from the days of the ancient Egyptians, a king instructs a young prince that "[a] good character is remembered." 1 Miriam Lichtheim, *Ancient Egyptian Literature* 107 (1973).

{16} Modern scientific research now confirms what human beings have always observed in their own family and community relationships, that the average person is able to explain, and even predict, a subject's behavior with a significant degree of accuracy. Susan Marlene Davies, *Evidence of Character to Prove Conduct: A Reassessment of Relevancy*, 27 Crim. L. Bull. 504, 517 (1991); *see* Thomas J. Reed, *The Character Evidence Defense: Acquittal Based on Good Character*, 45 Clev. St. L.Rev. 345, 356 (1997) ("According to the best available psychological data, character or personality trait theory has a scientific basis. Human beings do behave more or less consistently across a multitude of similar situations."). One of the predictive tools by which those determinations are made is the consideration of one's character traits based on patterns of past conduct. *See, e.g.*, Walter Mischel & Yuichi Shoda, *A Cognitive–Affective System Theory of Personality: Reconceptualizing Situations, Dispositions, Dynamics, and Invariance in Personality Structure*, 102 Psychol. Rev. 246, 246 (1995) (summarizing "recent empirical data demonstrating that individuals are characterized not only by stable individual differences in their overall levels of behavior, but also by distinctive and stable patterns of behavior variability across situations"). Because conduct reflects character, knowledge of character is necessarily helpful in predicting conduct.

## B. Common Law Development

{17} Recognition of the relevance of character evidence in the Anglo–American adjudicative process can be traced as far back into the remote mists of English history as our common law heritage can be documented. The first rudimentary jury trials began occurring after official abolition in 1215 A.D. of the medieval practice of trial by ordeal, in which the accused was submitted to what was deemed to be the divine verdict of God by being subjected to life-threatening survival tests employing fire, water, and other perils. *See* Roger D. Groot, *The Early–Thirteenth–Century Criminal Jury, in Twelve Good Men and True: The Criminal Trial Jury in England, 1200–1800*, 3, 5 (J.S. Cockburn & Thomas A. Green eds., 1988) [hereinafter *Twelve Good Men and True* ].

{18} Even before the thirteenth century institution of jury trials to determine guilt or innocence, historical records indicate that people sometimes placed more faith in their own community knowledge of a suspect's character and reputation than in the judgment of the Almighty. Between 1166 and 1215, for example, the accusatory historical predecessor to the presentment jury would screen defendants to spare some from being forced to undergo trial by ordeal, based in part on "a finding of its own regarding the character of the accused." Thomas Andrew Green, *Verdict According to Conscience: Perspectives on the English Criminal Trial Jury 1200–1800*, at 8 (1985) [hereinafter Green, *Verdict According to Conscience* ]; *see generally* Roger D. Groot, *The Jury of Presentment Before 1215*, 26 Am. J. Legal Hist. 1, 1–3 (1982).

{19} As the jury trial system developed during the ensuing centuries before American independence from Britain, the historical records confirm the consistently significant role of character in the determination of guilt or innocence. *See* Thomas A. Green, *A Retrospective on the Criminal Trial Jury, 1200–1800, in Twelve Good Men and True, supra*, at 358, 362 [hereinafter Green, *A Retrospective* ]. Initially, community juries based their decisions on their own first-hand knowledge and inquiries, without any process for calling and questioning witnesses. *See* Green, *Verdict According to Conscience, supra*, at 26–27. "Fact-finding involved an assessment of personal worth: Was the suspect the sort of person likely to have committed a certain act with malice?" *Id.* at 98.

{20} The regular use of outside witnesses as a primary source of information did not begin to develop until the latter half of the fifteenth century. *See* II Wigmore, *Evidence*, § 575, at 800–01 (Chadbourn rev. 1979); J.B. Post, *Jury Lists and Juries in the Late Fourteenth Century, in Twelve Good Men and True, supra*, at 65, 75. "Toward the end of the Middle Ages the trial jury underwent its epochal transformation from active neighborhood investigators to passive triers." John H. Langbein, *Historical Foundations of the Law of Evidence: A View from the Ryder Sources*, 96 Colum. L.Rev. 1168, 1170–71 (1996) [hereinafter Langbein, *Historical Foundations* ]. Without personal knowledge of the character of the persons before them, these passive juries had to depend on the testimony of witnesses to assist them in assessing the character of both the accused and the testifying witnesses. *See* P.G. Lawson, *Lawless Juries? The Composition and Behavior of Hertfordshire Juries, 1573–1624, in Twelve Good Men and True, supra*, at 117, 142 [hereinafter Lawson, *Lawless Juries?* ]; Green, *A Retrospective, supra*, at 371. For example, in the celebrated 1535 capital trial of Sir Thomas More for treason against King Henry VIII that has been dramatized in *A Man For All Seasons*, More asked his jury to reject the sworn testimony of his accuser, Solicitor General Richard Rich, because Rich "always lay under the odium of a very lying tongue, of a great gamester, and of no good name and character." 1 *A Complete Collection of State Trials and Proceedings for High Treason and Other Crimes and Misdemeanors from the Earliest Period to the Year 1783*, at 390 (T.B. Howell ed., London, T.C. Hansard 1816).

{21} By 1700, when the transformation from self-informed to witness-informed juries was substantially complete, historical documents reflect the continuing reality that "the most important [influence on the outcome of the criminal trial] was the character of the

accused." Lawson, *Lawless Juries?, supra,* at 156; *see* John H. Langbein, *The Criminal Trial Before the Lawyers,* 45 U. Chi. L.Rev. 263, 305 (1978) [hereinafter Langbein, *Criminal Trial Before the Lawyers* ]. Character witnesses played a significant role in informing trial juries that the accused was of such good character that he was unlikely to have committed the charged offense. *See* 9 W.S. Holdsworth, *A History of English Law* 207, 230 (1926).

{22} Systematic regulation of the use of character testimony and other forms of evidence did not begin developing in any significant way until the courts began allowing defense counsel for the accused in the eighteenth century. *See* Langbein, *Historical Foundations, supra,* at 1197. A prominent scholar has suggested that "the true historical function of the law of evidence may not have been so much jury control as lawyer control." Langbein, *Criminal Trial Before the Lawyers, supra,* at 306. The limitations on admissibility embodied in rules of evidence after lawyers began participating in trials were developed "to prevent error by excluding from jurors information that might mislead them." Langbein, *Historical Foundations, supra,* at 1195.

{23} One of the most significant limitations that came to be imposed on character testimony was to preclude the prosecution's affirmative use of bad character evidence to show a likelihood of guilt on the part of the accused, not because the evidence lacked logical relevance, but because of its substantial prejudicial effect. *See* IA Wigmore, *supra,* § 57, at 1180–81. As observed by Justice Jackson, "[t]he overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." *Michelson,* 335 U.S. at 476, 69 S.Ct. 213; *see also* Miguel Angel Méndez, *California's New Law on Character Evidence: Evidence Code Section 352 and the Impact of Recent Psychological Studies,* 31 UCLA L.Rev. 1003, 1045–46 (1984) (summarizing psychological studies that support the law's concerns about the highly prejudicial effects of negative character evidence).

{24} The criminally accused, however, has always retained the time-honored right to offer evidence of his own good character in his defense. *Michelson,* 335 U.S. at 476, 69 S.Ct. 213. In doing so, he opens the door to the prosecution's use of countervailing character witnesses and of cross-examination questions asking defense character witnesses about their awareness of information inconsistent with good character. *Id.* at 479, 69 S.Ct. 213. "Thus, while the law gives defendant the option to show as a fact that his reputation reflects a life and habit incompatible with commission of the offense charged, it subjects his proof to tests of credibility designed to prevent him from profiting by a mere parade of partisans." *Id.; see also Elinski,* 1997–NMCA–117, ¶ 22, 124 N.M. 261, 948 P.2d 1209 (stating that when a defendant offers reputation or opinion testimony under Rule 404(A)(1) regarding his good character as to a particular trait, "the prosecution is entitled to rebut that testimony" with evidence regarding the defendant's bad character for the same trait).

## C. The New Mexico and Federal Rules of Evidence

{25} The New Mexico Rules of Evidence, first promulgated by this Court in 1973, were patterned after the draft of the proposed Federal Rules of Evidence that had been submitted for approval to Congress by the United States Supreme Court a few months earlier. *See Ammerman v. Hubbard Broad., Inc.,* 89 N.M. 307, 309, 551 P.2d 1354, 1356 (1976); *see generally* Proposed Federal Rules of Evidence for United States Courts and Magistrates, 56 F.R.D. 183 (1972) (ordering new Rules of Evidence sent to Congress for approval). New Mexico actually adopted the federal rules a full two years before they were put into use in the federal courts, as a result of Congress's delaying adoption and making a number of changes in the 1972 draft before finally approving an amended version for the federal courts in 1975. *See* Evan Stephenson, *Alone and Out of Excuses: The Tenth Circuit's Refusal to Apply Federal Rule of Evidence 407 to Product Liability Actions,* 36 N.M. L.Rev. 391, 394 (2006). The texts of the two rules in question in this

case, however, have always remained substantially identical to their federal counterparts. Although there was no independent committee commentary accompanying our original State rules, the 1972 Advisory Committee Notes to Federal Rule 404(a)(1) observed that admissibility of character evidence on behalf of a criminal defendant "is so deeply imbedded in our jurisprudence as to assume almost constitutional proportions." Fed.R.Evid. 404(a)(1) advisory committee's notes.

▆ {26} The new rules of evidence, with minor exceptions such as allowing character witnesses to testify to their own personal opinions in addition to hearsay-based community reputation, carried forward the character evidence procedures long recognized in New Mexico and federal case law. Both before and after replacement of common law evidence precedents with codified rules, New Mexico cases have consistently recognized the right of the accused to introduce evidence of good character as substantive evidence of innocence, in contrast to a well-established general prohibition against other uses of character evidence as proof of conduct in both criminal and civil cases.

> There can be no question but that evidence of the character and reputation of a defendant charged with a crime is always admissible on behalf of defendant. This rule, however, is subject to the well established limitation that such evidence must be restricted to the trait of character which is in issue and ought to have some reference to the nature of the charge.

*Territory v. Pierce*, 16 N.M. 10, 16, 113 P. 591, 593 (1911); *see also State v. McKnight*, 21 N.M. 14, 32, 153 P. 76, 80 (1915) (quoting *Wharton's Criminal Evidence* for the proposition that "it is always relevant for the defendant to offer affirmative evidence of character, and to prove that it was such as to make it unlikely that he would have committed the act charged against him" (internal quotation marks omitted)); *Elinski*, 1997-NMCA–117, ¶ 10, 124 N.M. 261, 948 P.2d 1209 (reaffirming that it is a defendant's exclusive option to open the door to litigation concerning his character).

{27} New Mexico also has followed the common law doctrine of admissibility of character evidence to impeach, and, in response, to rehabilitate the credibility of any witness's testimony in a civil or a criminal case, a procedure that now has been codified in Rule 11–608(A). *See State v. Perkins*, 21 N.M. 135, 141, 153 P. 258, 260 (1915) (stating that a witness may be impeached by "evidence relating to his character and directly tending to show that the witness lacks truthfulness" (internal quotation marks and citation omitted)); *State v. Ross*, 88 N.M. 1, 3–4, 536 P.2d 265, 267–68 (Ct.App.1975) (summarizing New Mexico character evidence rules).

{28} Most federal and state jurisdictions, including New Mexico, long ago narrowed the witness impeachment character inquiry from one of general bad moral character to the specific character traits of truthfulness or untruthfulness, the standard now embodied in Rule 11–608(A). *See Perkins*, 21 N.M. at 145, 153 P. at 261 (relying on former statute allowing for impeachment by general evidence of bad moral character); IIIA Wigmore, *Evidence*, § 923, at 728–29 & n. 2 (Chadbourn rev.1970). Our cases also have long recognized that a defendant who takes the stand is subject to the same impeachment techniques as other witnesses. *See Territory v. DeGutman*, 8 N.M. 92, 98, 42 P. 68, 69 (1895) ("The defendant offered herself as a witness, and was therefore subject to cross-examination the same as any other witness . . . ."); *State v. Duran*, 83 N.M. 700, 702, 496 P.2d 1096, 1099 (Ct.App.1972) ("When an accused takes the witness stand he is in the same position as any other witness" with regard to impeachment and cross-examination).

{29} To avoid the kind of confusion that has marked every stage of this case, it is important to understand the differing purposes and differing procedures relating to the use of character testimony for determining a defendant's conduct and for assessing a witness's credibility. As the United States Supreme Court has emphasized in confirming that substantive character evidence relevant to guilt or innocence does not depend on the defendant's taking the stand, substantive character testimony is "not intended to give

weight to the defendant's personal testimony in the case, but to establish a general character inconsistent with guilt of the crime with which he stood charged; and the evidence [is] admissible whether or not the defendant himself testified." *Edgington v. United States*, 164 U.S. 361, 363–64, 17 S.Ct. 72, 41 L.Ed. 467 (1896).

■ {30} The law therefore permits conceptually separate uses of character witness testimony as circumstantial evidence (1) to challenge the likelihood of an accused's commission of a charged crime under Rule 11–404(A)(1) and (2) to impeach or to rehabilitate the testimony of any witness under Rule 11–608(A). Because no issue is properly before us regarding the use of character evidence for impeachment of a witness, we address only the relevance and admissibility of the proffered character testimony as Rule 404 substantive evidence.

{31} Whether a defendant's character for honesty and truthfulness are pertinent traits in a prosecution for solicitation to commit burglary are questions of first impression in New Mexico. Our resolution necessarily focuses on the meaning of "pertinent trait of character" in Rule 11–404:

> A. **Character evidence generally.** Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>
> (1) **Character of accused.** Evidence of a pertinent trait of character offered by an accused, or by the prosecution to rebut the same.

{32} The State successfully argued in the district court the same position that it has maintained throughout the appellate process, that "there is no pertinent character trait that has been put in issue" because there is no character trait pertinent to a person's propensity to commit any crime of solicitation, including the crime of solicitation to commit burglary charged in this case. In response, defense counsel has argued that "evidence whether he is honest, he's the type of person that commits dishonest acts of robbery and burglary is pertinent."

■ {33} By limiting character testimony to a "pertinent" trait, Rule 404(A)(1) has confirmed that character evidence must relate to a specific relevant trait in order to be admissible. "Rule 404 permits evidence of traits only; an earlier draft was modified, deleting language that would have allowed the introduction of evidence of a defendant's character generally." *United States v. Angelini*, 678 F.2d 380, 382 (1st Cir.1982); *see* 1 Edward J. Imwinklereid et al., *Courtroom Criminal Evidence* § 804, at 293 (3d ed. 1998) ("In order for evidence about a specific character trait to be admissible, the trait must have a reasonable tendency to show that the defendant is not likely to have committed the specific act charged."); *United States v. Yarbrough*, 527 F.3d 1092, 1101 (10th Cir.2008) (confirming that a "pertinent" character trait means a "relevant" one); *United States v. Hewitt*, 634 F.2d 277, 279 (5th Cir.1981) (citing authorities confirming without exception that "pertinent" is synonymous with "relevant" in applying Rule 404). We turn now to an examination of the pertinency, or relevancy, of honest and truthful character as substantive evidence for the defense in a prosecution for solicitation to commit aggravated burglary.

D. **Admissibility of Evidence of Honesty and Truthfulness as Pertinent Traits in a Prosecution for Solicitation to Commit Burglary**

■ {34} Although the precise issues in this case are matters of first impression in New Mexico, past opinions of this Court and others provide helpful guides for the determination of pertinency, or relevancy, of particular character traits to charged crimes. Because proof of a person's character provides "circumstantial evidence that tends to show that [a person] acted in conformity with his or her character on a particular occasion," *State v. Armendariz*, 2006-NMSC-036, ¶ 17, 140 N.M. 182, 141 P.3d 526, "proof of character, to be relevant, must be confined to the nature of the offense under charge and bear some pertinent analogy and reference to it." *McKnight*, 21 N.M. at 32, 153 P. at 80 (holding that a defendant's reputation for chastity was irrelevant and inadmissible in a prosecution for homicide).

In common human experience acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on [a person's] honesty and integrity. Acts of violence on the other hand, which may result from a short temper, a combative nature, extreme provocation, or other causes, generally have little or no direct bearing on honesty or veracity.

*State v. Melendrez,* 91 N.M. 259, 261, 572 P.2d 1267, 1269 (Ct.App.1977) (internal quotation marks and citation omitted) (analyzing relevance of shoplifting offense to honest character under Rule 609). Some admissible character traits, like a person's character for obeying the strictures of the law, or being "law-abiding," are pertinent to a broader range of offenses than narrower traits such as nonviolence or honesty. *See Hewitt,* 634 F.2d at 279 (5th Cir.1981) (holding that law-abiding character is admissible in all cases); *see also People v. Miller,* 890 P.2d 84, 92 (Colo.1995) (distinguishing admissibility of law-abiding and truthfulness traits).

{35} In this case, Defendant proffered that his character witnesses would testify that he was both an honest and a truthful person. Throughout this litigation, the parties have made no efforts to distinguish honesty and truthfulness as traits having differing relevance or applicability. Honesty and truthfulness, if indeed they can be considered separate traits in other contexts, have been treated as interchangeable in New Mexico case law involving analogous character trait relevance. *See Melendrez,* 91 N.M. at 261, 572 P.2d at 1269 (holding that offenses of "deceit, fraud, cheating, or stealing" are relevant to both honesty and veracity for purposes of Rule 609 impeachment). The district court determined that evidence of neither was admissible in a prosecution for solicitation to commit burglary. The Court of Appeals, relying in part on the analogous *Melendrez* opinion construing relevance for Rule 609 purposes, concluded that evidence of both was admissible. The State asks us to hold that neither trait was admissible, and Defendant asks us to hold that both were admissible. Although the parties did not articulate any distinction between the two, our research reflects that we must address whether we should recognize any such distinction for the purposes of deciding this case.

{36} A few courts in other jurisdictions have taken the view that honesty and truthfulness should be given separate evidentiary application under Rule 404(A)(1), on the theory that "one who is honest must also be truthful because honesty subsumes truthfulness," while "one may be truthful but not be honest." *Wiggins v. State,* 778 S.W.2d 877, 889 (Tex.Ct.App.1989). Our research, however, has found no psychological, sociological, or other scientific or empirical research to support what appear to be only *ipse dixit* theoretical distinctions. A number of jurisdictions, like New Mexico, either have not accepted or have explicitly rejected such narrow distinctions in determining the scope of relevant character traits. *See State v. Stewart,* 712 A.2d 362, 364 (R.I.1998) ("[T]he distinction between the word 'truthful' and the word 'honest' is so subtle as to be imperceptible."); *accord Manna v. State,* 945 A.2d 1149, 1155 (Del.2008) (rejecting the practical utility of such a distinction and holding that evidence of both honesty and truthfulness are admissible under Rule 404(A)(1) in a robbery trial). We think the latter cases represent the better view and reaffirm the approach of *Melendrez.* There is simply no persuasive authority to support a theory that psychologists or ordinary citizens would draw any realistic distinctions between the likely behaviors of an "Honest Abe" and a "Truthful Abe."

{37} Honesty is considered to be a trait of character pertinent to a charge involving a theft crime, such as the burglary Defendant was accused of having solicited to be committed in this case. *See 1 McCormick on Evidence* § 191, at 769 (Kenneth S. Broun et al. eds., 6th ed.2006); *see also State v. Austad,* 197 Mont. 70, 641 P.2d 1373, 1383 (1982) (character for honesty and truthfulness pertinent under Rule 404(A)(1) to burglary and robbery charges); *State v. Hortman,* 207 Neb. 393, 299 N.W.2d 187, 190 (1980) (acknowledging honesty pertinent to a charge of theft).

{38} This same character trait analysis has been used in the context of determining the kinds of offenses that are pertinent to truthfulness and honesty in the related context of witness impeachment under other rules. *See Melendrez,* 91 N.M. at 261, 572 P.2d at 1269 (holding that shoplifting is relevant to dishonest and untruthful character under Rule 609); *see also Michelson,* 335 U.S. at 483, 69 S.Ct. 213 (observing that the crimes of receiving stolen property and offering a bribe to a revenue agent are traits that are inconsistent with an honest and truthful character); *People v. Lassell,* 108 Cal.App.3d 720, 166 Cal.Rptr. 678, 683 (1980) (holding that burglary and receiving stolen property are relevant to honesty and veracity); Oxford English Dictionary 350 (2d ed.1989) (showing the modern understanding of "honesty" as "the quality opposed to lying, cheating, or stealing"); American Heritage Dictionary of the English Language 632 (1973) (defining "honest" as "[n]ot lying, cheating, stealing, or taking unfair advantage"); Webster's New World College Dictionary 684 (4th ed.2002) (defining "honesty" as "refraining from lying, cheating, or stealing").

{39} In this case, the State makes no argument that evidence of honest and truthful character would have been inadmissible if Defendant had been charged with personally committing a burglary. Instead, it argues that a character trait that is pertinent to a charge of burglary is not pertinent to a charge of soliciting someone else to carry out the same burglary.

{40} Criminal solicitation is not committed in a vacuum; it is a specific intent crime that requires the solicitation of a substantive underlying crime. *See* § 30–28–3(A) ("[A] person is guilty of criminal solicitation if, with the intent that another person engage in conduct constituting a felony, he solicits, commands, requests, induces, employs or otherwise attempts to promote or facilitate another person to engage in conduct constituting a felony within or without the state."). At Defendant's trial, the jury was properly instructed to determine whether Defendant intended to encourage another person to commit aggravated residential burglary. In order to find Defendant guilty, the jury was required to find beyond a reasonable doubt that he intended to cause the person he solicited to make an unlawful entry into a dwelling for the purpose of committing a theft inside.

{41} The State's theory seems to focus on an accused's particular physical role in the planned crime, instead of the presence or absence of his criminal intent, in determining which character traits are pertinent to a consideration of the likelihood of his participation in the crime. This misapprehends why the law considers character to be relevant in determining guilt or innocence. Criminal intent is the essence of what distinguishes criminal from non-criminal conduct.

> The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.

*Morissette v. United States,* 342 U.S. 246, 250, 72 S.Ct. 240, 96 L.Ed. 288 (1952) (quoting William Blackstone, 4 *Commentaries* *22); *see also State v. Yarborough,* 1996–NMSC–068, ¶ 9, 122 N.M. 596, 930 P.2d 131 ("We must be sure that the penalties associated with a felony conviction are imposed only in response to an act done with at least the minimum culpable state of mind."). In the more colorful phrasing of Justice Oliver Wendell Holmes, "even a dog distinguishes between being stumbled over and being kicked." Oliver Wendell Holmes, Jr., *The Common Law* 3 (Little, Brown & Co.1938) (1881).

{42} The fallacy of focusing on an accused's physical participation, instead of the relationship between his intent and the commission of a crime, is demonstrated by a few hypothetical differences in how one could intentionally assist in the commission of a burglary. The State has never argued with the proposition that an honest person would be less likely than a dishonest person to enter a home with the intent to steal. Would honesty be any less relevant where a person is accused of reaching through a window to accomplish the same theft, without getting

his whole body inside? Or where a defendant allegedly used a pair of tongs to reach inside without any part of his own body crossing the threshold? Or where a defendant is charged with having used a remote control robotic device to make the entry and theft? Or where the defendant, as in this case, allegedly used a human agent instead of a mechanical device to accomplish the very same theft? It is obvious to us that the character inquiry goes to whether a person would be likely to participate intentionally in a crime of theft and not on the physical means of accomplishing that dishonest result.

{43} Our cases on accessory liability are consistent with this conclusion. This Court has long recognized that for an accessory who encourages or assists another to commit a crime to be punishable, an accessory "must share the criminal intent of the principal." *State v. Ochoa*, 41 N.M. 589, 599, 72 P.2d 609, 615 (1937). "This intent can be inferred from behavior which encourages the [criminal] act...." *State v. Carrasco*, 1997–NMSC–047, ¶ 7, 124 N.M. 64, 946 P.2d 1075 (citing *Ochoa* with approval). For Defendant to have committed the charged crime of solicitation to commit burglary, he must have intended to cause someone to make an unauthorized entry into a home for the purpose of carrying out a crime of dishonesty. His own honest character would have been relevant to the factfinder's assessment of the likelihood that he might have committed such a crime, and the evidence should have been admitted under the requirements of Rule 11–404(A)(1).

### E. Harmless Error Analysis

{44} In determining whether a reversal of a conviction is required by the erroneous exclusion of defense evidence, we do not substitute ourselves for a jury and determine either the credibility of witnesses or the ultimate question of guilt or innocence. Instead, once we conclude that error has been committed in the exclusion of evidence, it is our responsibility to reverse and remand for a new trial unless there is no "reasonable possibility that the excluded evidence might have affected the jury's verdict." *State v. Balderama*, 2004–NMSC–008, ¶ 41, 135 N.M. 329, 88 P.3d 845.

{45} The Court of Appeals opinion explicitly held that the erroneous exclusion of all of Defendant's character witnesses might have affected the jury's verdict. The State, apparently conceding the correctness of that determination, neither petitioned for certiorari review of that holding nor made any written or oral argument before this Court that any error in exclusion of the evidence was harmless. Although we disagree with the Court of Appeals' analysis to the extent it can be interpreted as indicating that the excluded character testimony would have bolstered Defendant's credibility as a witness, which is a Rule 608 rather than a Rule 404 analysis, we agree with the conclusion that the testimony had the potential of supporting a reasonable doubt about Defendant's guilt. *See Yarbrough*, 527 F.3d at 1101–03 (holding that exclusion of substantive character evidence bearing on criminal intent because of confusion of Rules 404 and 608 was not harmless error).

{46} The prosecution's case relied solely on one witness, Torres, to provide crucial first-hand testimony claiming Defendant committed the charged criminal act of solicitation with the intent that a burglary be committed. All remaining prosecution evidence, including the testimony of Defendant's mother-in-law, was indirect circumstantial evidence that may have helped show Defendant's motive and opportunity, but it was by no means conclusive. *See Edgington*, 164 U.S. at 366, 17 S.Ct. 72 ("The circumstances may be such that an established reputation for good character, if it is relevant to the issue, would alone create a reasonable doubt, although, without it, the other evidence would be convincing.").

{47} The excluded character evidence, according to Defendant's proffer, would have constituted substantive evidence that Defendant was not the kind of person who would have solicited someone to commit the charged crime involving dishonest conduct. We cannot conclude that its erroneous exclusion was harmless. Defendant is therefore entitled to a new trial at which the jury can decide what weight, if any, to give to the admissible evidence of his character.

## IV. CONCLUSION

{48} We hold that testimony concerning Defendant's character for honesty and truthfulness was admissible as relevant Rule 11–404(A)(1) evidence in a prosecution for solicitation to commit burglary and that the district court erred in categorically excluding all such evidence. We therefore reverse Defendant's conviction and remand to the district court for a new trial.

{49} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PATRICIO M. SERNA, PETRA JIMENEZ MAES and RICHARD C. BOSSON, Justices.