**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2015-NMCA-015**

**Filing Date: December 16, 2014**

**Docket No. 32,530**

**STATE OF NEW MEXICO,**

    **Plaintiff-Appellee,**

**v.**

**JESSE DURAN,**

    **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Kenneth H. Martinez, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Ralph E. Trujillo, Assistant Attorney General
Albuquerque, NM

for Appellee

Law Offices of the Public Defender
Jorge A. Alvarado, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## OPINION

**GARCIA, Judge.**

**{1}** Defendant, Jesse Duran, appeals from his conviction for criminal sexual penetration of a minor in the first degree (CSPM). He contends, among other things, that the district court erred by allowing the individual who conducted the S.A.F.E. House interview of the victim to testify, as a lay witness, that a majority of children she interviewed delayed in disclosing sexual abuse. We agree. This delayed disclosure testimony was the proper subject

1

for expert testimony as opposed to lay testimony. We also conclude that the error was not harmless. Accordingly, we reverse Defendant's conviction and remand for a new trial.

**BACKGROUND**

**{2}** Defendant was accused of digitally penetrating his girlfriend's daughter (Victim) sometime between 1996 and 1998. Defendant was not charged with CSPM until May 2006. Victim was twenty-one years old at the time she testified at Defendant's trial.

**{3}** Victim testified that Defendant abused her when she was in either second or fourth grade. Defendant was Victim's mother's boyfriend at the time, and Victim was sleeping on a mattress with Victim's sister in the living room of Defendant's mother's house. Victim testified that she woke up to Defendant "touching [her]." She said that Defendant placed his fingers in her vagina while she was asleep. She stated Defendant asked her "if it felt good," and that she responded by pushing him away. Victim said that she then got up and went to school. She stated that, after this incident, she "tried to stay away [from Defendant] as much as [she] could" and "never felt comfortable in front of him[.]"

**{4}** Victim testified that she did not tell anyone about the incident at the time because she "was scared" and that she "[didn't] know" why she was scared. She said that she later told her sister, three of her cousins, and two of her close friends. None of these six family members or friends testified at trial. When Victim was in sixth grade, she told her mother that Defendant had touched her. Victim's mother confronted Defendant, who denied the allegation, and Victim's mother did nothing further. Victim told her mother again in the fall of 2004, a few months after her mother had broken off her relationship with Defendant. This time, Victim's mother reported the incident to law enforcement, who conducted an investigation. Victim was interviewed by Denise Clement, a forensic interviewer at a child S.A.F.E. House on January 25, 2005.

**{5}** Clement testified at trial that a child S.A.F.E. House is a child advocacy center where professionals interview children who are suspected to be victims of sexual abuse, physical abuse, or who have witnessed violent crimes. She testified about her interview of Victim and her experience as a S.A.F.E. House interviewer in general. Clement testified that she worked as a S.A.F.E. House interviewer from 2002 to 2008 and conducted between 1400 and 1600 interviews during that period of time. She described the interview as "a structured conversation with a child" that is "designed to try and elicit accurate events about the child['s] . . . account." She explained that "the goal of the interview is to either refute or corroborate the allegation."

**{6}** During a lengthy bench conference during Clement's testimony, defense counsel argued that Clement should not be allowed to testify about the percentage of children who delay reporting sexual abuse. Defense counsel argued that this was a subject for expert testimony, and Clement was not qualified as an expert. The district court overruled Defendant's objection, stating:

Well, it seems to me that, really, this is an issue in the case, and everybody realizes that it is an issue, and it's an issue in many child sexual abuse cases. This witness, based upon her training, and most especially, her experience in meeting with these children who are victims of sexual assault, this is not an expert opinion, but is more of a lay opinion, based upon her experience in the unit. And so I'm going to go ahead and allow the testimony.

**{7}** The jury was excused for further questioning of Clement. The prosecutor asked Clement: "[B]ased on your experience, what percentage of the children that you personally interviewed have a delayed disclosure. Do you know what I mean by that?" Clement answered, "Yes, I do. It's been awhile since I reviewed the statistics, but it's greater than 50 percent." Clement explained that this percentage was based on her personal experience and the S.A.F.E. House's internal record-keeping. Clement later clarified: "I was really referring to what I'm remembering about the data. I certainly can't say what percentage of kids I interviewed, because I didn't keep track of that."

**{8}** When the jury returned, the prosecutor asked Clement, "Can you put a percentage on how many children delay in disclosing?" Clement stated that she could not give a percentage, but that "[i]n the majority of children that I've interviewed at the [S.A.F.E.] House, there is a delay in disclosure." When the issue was raised once again prior to closing arguments, the district court stated, "I think it's fairly well-known and considered of people in the field that . . . delayed reporting is common in these types of cases. . . . I don't find it in any way to be a stretch or outside, you know, learned treatises and other facts[.]"

**{9}** In its closing argument, the State told the jury that it was "to determine whether or not [it] believe[d Victim]" and that if it "believe[d] that she was telling the truth . . . , then the State has proven its case[.]" The jury found Defendant guilty of CSPM. Defendant was sentenced and this appeal followed.

**DISCUSSION**

**{10}** Defendant raises two issues on appeal. First, he contends the district court erred in allowing Clement to testify that a majority of children she interviewed delayed in disclosing sexual abuse because her statement was not a lay opinion, and she was not qualified as an expert to offer such testimony. Second, he contends the district court erred in failing to excuse three jurors for cause. Because we agree that the district court erred with respect to Clement's lay testimony about delayed disclosure, and because we conclude that the error was not harmless, we reverse Defendant's conviction and do not address the juror issue.

**A.** **The Behavior of Child Victims of Sexual Abuse in General is Not a Proper Subject for Lay Testimony**

**{11}** Defendant contends the district court erred in allowing Clement to testify about the

frequency of delayed disclosure of sexual abuse in children because this is not a proper subject for lay testimony. Generally, we review a district court's evidentiary rulings for an abuse of discretion. *State v. Martinez*, 2008-NMSC-060, ¶ 10, 145 N.M. 220, 195 P.3d 1232. But we review de novo "[a] misapprehension of the law upon which a court bases an otherwise discretionary evidentiary ruling[.]" *Id.*; *see also State v. Torres*, 1999-NMSC-010, ¶ 28, 127 N.M. 20, 976 P.2d 20 ("[T]he threshold question of whether the trial court applied the correct evidentiary rule or standard is subject to de novo review on appeal.").

**{12}** New Mexico courts have reported numerous decisions addressing the admissibility of expert testimony on the subject of the behavior of children who allege sexual abuse. *See, e.g.*, *State v. Casaus*, 1996-NMCA-031, ¶¶ 31-32, 121 N.M. 481, 913 P.2d 669 (affirming admission of expert testimony about how a child remembers an event); *State v. Newman*, 1989-NMCA-086, ¶¶ 11, 15, 109 N.M. 263, 784 P.2d 1006 (affirming admission of expert testimony concerning the general characteristics of sexually abused children). However, we have no published authority addressing the admissibility of lay testimony on the subject of children's behavior when alleging sexual abuse.

**{13}** Rule 11-701 NMRA governs the admissibility of opinion testimony by lay witnesses and provides:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is
>
> A. rationally based on the witness's perception,
>
> B. helpful to clearly understanding the witness's testimony or to determining a fact in issue, and
>
> C. not based on scientific, technical, or other specialized knowledge within the scope of Rule 11-702 NMRA.

Rule 11-702 allows a witness "who is qualified as an expert" to testify "in the form of an opinion or otherwise" if the witness has "scientific, technical, or other *specialized knowledge*" that "will help the trier of fact to understand the evidence or to determine a fact in issue." (Emphasis added.)

**{14}** Defendant contends that the frequency of delayed reporting of sexual abuse by children is not a proper subject for lay testimony and can only be admitted through expert testimony. Defendant characterizes Clement's testimony as "generalities in a specialized area in the abstract." The State argues that Clement's testimony was properly admitted under Rule 11-701 because it was based on Clement's personal observations, not any specialized knowledge. We disagree with the State.

**{15}** Other authorities have concluded that testimony about the behavior of sexually

4

abused children must be admitted as expert testimony and not lay testimony. In *State v. Gonzalez*, 834 A.2d 354, 356-59 (N.H. 2003), the New Hampshire Supreme Court held that a social worker's and detective's testimony about the frequency of victim recantations or denials and of delayed disclosure of sexual abuse could not be admitted as lay opinion. There, the detective testified at trial that he was trained to interview child victims of sexual abuse and that based on his experience as a lead investigator, "it is not unusual for a sexual assault victim to delay disclosure." *Id.* at 359. The court concluded that this testimony should have been excluded. It explained, "While [the detective's] testimony was based upon his personal observations while investigating sexual assault cases, his observations and conclusions regarding the frequency of delayed disclosures required specialized training, experience[,] and skill not within the ken of the ordinary person." *Id.* (internal quotation marks and citation omitted); *see also* 1 Paul DerOhannesian II, *Sexual Assault Trials* § 11.17 at 856 (3d ed. 2006) ("Opinions about sexual abuse victims' denials and recantations ordinarily require training, observations, and experience not within the common knowledge of the general public and are not admissible as lay witness testimony."). We agree with these authorities and conclude that statements about the behavior of children alleging sexual assault is not a proper subject for lay testimony because it is neither the kind of personal observation that a lay person is capable of making nor common knowledge within the general public.

**{16}**     The record reflects that the district court confused the requirements of Rule 11-701 and Rule 11-702. The district court explained that it would allow Clement to testify about delayed disclosure "based upon her training, and most especially, her experience in meeting with these children who are victims of sexual assault[.]" The fact that, as part of Clement's training and experience, she learned that delay occurred in a number of cases of alleged child abuse is not a legitimate basis for admitting the opinion of a lay witness; it can be important in admitting the opinion of an expert witness. *See* Rule 11-702 (defining an expert witness as "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education"). Training and experience are factors to be considered in evaluating expert testimony, not lay testimony. The court also explained that the frequency of delayed reporting is well-known by people in this field and reflected in learned treatises. Knowledge contained in treatises and understood by practitioners in their particular field is the type of testimony presented by an expert witness because it is not the type of information generally known by an ordinary citizen or the general public. *See Hopkins v. State*, 639 So. 2d 1247, 1252-53 (Miss. 1993) (reversing the defendant's conviction where a social worker testified as a lay witness regarding the defendant's prior crime of a pedophilic nature to establish that such a crime was relevant for the propensity of truthfulness and to impeach the defendant's credibility without additional expert testimony relying on statistical studies or treatises).

**{17}**     Moreover, during her voir dire examination Clement said that her statement on delayed disclosure was based not just on her personal observations, but also on specific statistics compiled in the S.A.F.E. House's specialized work environment. She explained that, in answering the prosecutor's question about the frequency of delayed disclosure, she "was really referring to what [she was] remembering about the data." Thus, her statement

about delayed disclosure data was based on "specialized knowledge" and thus should not have been admitted under Rule 11-701. *See* Rule 11-701 (stating that lay witness opinion testimony cannot be "based on scientific, technical, or other specialized knowledge within the scope of Rule 11-702").

**{18}** We conclude that the district court erred in allowing Clement to testify as a lay witness that "[i]n the majority of children that I've interviewed at the [S.A.F.E.] House, there is a delay in disclosure." We reach this conclusion because this statement was based on "specialized knowledge" within the purview of experts under Rule 11-702 and infers that Victim's delayed disclosure was consistent with most of the children that Clement has interviewed.

**B.     The Error in Allowing the Interviewer to Testify Regarding the Frequency of Delayed Reporting in Child Abuse Victims Was Not Harmless**

**{19}** We next consider whether the district court's error in admitting Clement's testimony on delayed disclosure was harmful. *See State v. Tollardo*, 2012-NMSC-008, ¶ 25, 275 P.3d 110 ("Improperly admitted evidence is not grounds for a new trial unless the error is determined to be harmful."). "We review improperly admitted evidence for non-constitutional harmless error." *State v. Serna*, 2013-NMSC-033, ¶ 22, 305 P.3d 936. A non-constitutional error is harmless "when there is no reasonable *probability* the error affected the verdict." *Tollardo*, 2012-NMSC-008, ¶¶ 36, 42 (internal quotation marks and citation omitted) (stating that the "central inquiry" of non-constitutional harmless error analysis is "whether [the] error was likely to have affected the jury's verdict").

**{20}** In " 'assessing the probable effect of evidentiary error,' " we " 'should evaluate all of the circumstances surrounding the error.' " *Serna*, 2013-NMSC-033, ¶ 23 (quoting *Tollardo*, 2012-NMSC-008, ¶ 43). These circumstances include "the source of the error [and] the emphasis placed on the error," *Serna*, 2013-NMSC-033, ¶ 23; "the other, non-objectionable evidence of guilt, not for a sufficiency-of-the-evidence analysis, but to evaluate what role the error played at trial[,]" *State v. Leyba*, 2012-NMSC-037, ¶ 24, 289 P.3d 1215; "the importance of the erroneously admitted evidence in the prosecution's case," *State v. Lovett*, 2012-NMSC-036, ¶ 55, 286 P.3d 265 (alteration, internal quotation marks, and citation omitted); and "whether the error was cumulative or instead introduced new facts[,]" *Tollardo*, 2012-NMSC-008, ¶ 43 (alteration, internal quotation marks, and citation omitted). We remain mindful that "[t]hese considerations, however, are not exclusive[.]" *Serna*, 2013-NMSC-033, ¶ 23. "[T]hey are merely a guide to facilitate the ultimate determination—whether there is a reasonable probability that the error contributed to the verdict." *Id.* The State bears the burden to prove that the error was harmless. *See State v. Stephen F.*, 2008-NMSC-037, ¶ 38, 144 N.M. 360, 188 P.3d 84.

**{21}** The State contends that any error was harmless because there was sufficient evidence of Defendant's guilt even in the absence of Clement's testimony about delayed disclosure. We disagree for the following reasons.

**{22}** First, the State was "the source of the error," not Defendant. *See Serna*, 2013-NMSC-033, ¶ 23. Defendant did not elicit Clement's improper testimony—the State did.

**{23}** Second, the delayed disclosure testimony was not "cumulative"—it presented the jury with the "new fact[]" that in "the majority of children [Clement interviewed at the S.A.F.E. House], there was a delay in disclosure." *See Lovett*, 2012-NMSC-036, ¶ 55.

**{24}** Third, although the State did not place "emphasis" on the delayed disclosure testimony, this testimony was important to its case. *See Serna*, 2013-NMSC-033, ¶ 23; *Lovett*, 2012-NMSC-036, ¶ 55. It was important, no matter how briefly it was discussed, because it was designed to lead the jury to infer that Victim's delay in disclosing the incident was justified—an inference that would support Victim's credibility. *See Miller v. Commonwealth*, 77 S.W.3d 566, 571 (Ky. 2002) (determining that "[t]here could be only two possible purposes for [questioning an expert about what percentage of children delay in reporting sexual abuse]: (1) to prove that [the victim] had, in fact, been abused because, like other abused children, she delayed reporting the abuse; or (2) to disprove an inference of fabrication arising from the delay in reporting").

**{25}** Fourth, although we agree with the State that the other non-objectionable evidence admitted at trial would be sufficient to uphold the conviction, we do not analyze this evidence for "sufficiency"; instead, we look at it "to evaluate what role the [erroneously admitted evidence] played at trial." *Leyba*, 2012-NMSC-037, ¶ 24. The only other evidence was Victim's testimony, her mother's testimony that Victim had told her about the incident, and Defendant's denials to the Victim's mother and the police. The State told the jury in its closing argument that this case was about "whether or not [the jury] believe[d Victim.]" Thus, the "role" of the delayed disclosure testimony was to support Victim's credibility, which, as the State recognized in its closing argument, was the central factual issue that the jury was to determine at trial—whether Victim "was telling the truth."

**{26}** We conclude that there is a reasonable probability that Clement's lay testimony on delayed disclosure affected the verdict. Where, as here, the improperly admitted evidence goes to the primary issue of credibility in a sexual abuse case, it is more likely to be prejudicial. Clement testified to her extensive training and experience working with victims of child sexual abuse over a six-year period with between 1400 to 1600 S.A.F.E. House interviews that she conducted. As a result, Clement's delayed-reporting testimony had the reasonable probability of carrying sufficient weight to have an impact and effect upon the jury. *See State v. Marrington*, 73 P.3d 911, 917 (Or. 2003) (concluding that erroneously admitted expert testimony about delayed reporting was harmful because the case "involved a swearing contest[, t]he victim claimed that there had been sexual contact in the form of inappropriate touching[, the] defendant denied that it had occurred[, with there being] no other witnesses to the touching, and there was no physical evidence of any kind that corroborated the alleged abuse[, thus t]he victim's delayed reporting was not a tangential issue, but [was] a central factual issue in this case"); *see also Stephen F.*, 2008-NMSC-037, ¶¶ 41-42 (concluding that the improper exclusion of a victim's motive to fabricate was not

harmless error in an alleged rape case because our courts "cannot overlook the fact that this [type of] case—like so many of its kind—boils down to a question of credibility"); *State v. Fairweather*, 1993-NMSC-065, ¶¶ 19-20, 116 N.M. 456, 863 P.2d 1077 (holding that erroneous admission of expert's testimony about sexual abuse victim's truthfulness was harmful because "[c]redibility . . . was a pivotal issue at trial"); *State v. Lucero*, 1993-NMSC-064, ¶¶ 21-22, 116 N.M. 450, 863 P.2d 1071 (concluding that an erroneous admission of expert testimony as to a sexual abuse victim's credibility was not harmless error because "[t]he only witnesses to the alleged abuse were the defendant and the complainant" and "credibility was a pivotal issue in [the] case"); *cf. State v. Marquez*, 2009-NMSC-055, ¶ 25, 147 N.M. 386, 223 P.3d 931 (concluding improperly admitted evidence was not harmless because it undermined the defendant's credibility), *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 37 n.6.

## CONCLUSION

**{27}** Defendant's conviction is reversed. Because Victim's testimony provided sufficient other evidence to support a conviction, we remand to the district court for a new trial. *See State v. Dowling*, 2011-NMSC-016, ¶ 18, 150 N.M. 110, 257 P.3d 930 (recognizing that double jeopardy protections do not bar retrial where sufficient evidence was presented to support a conviction).

**{28}    IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**MICHAEL E. VIGIL, Judge**

8