This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37751**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**ANTHONY ANDERSON,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**Steven Blankinship, District Judge**

Hector H. Balderas, Attorney General
Marko D. Hananel, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**HENDERSON, Judge.**

**{1}**     Defendant Anthony Anderson was convicted of two counts of criminal sexual penetration in the first degree (child under 13), contrary to NMSA 1978, Section 30-9-11(D)(1) (2009). Defendant appeals on three grounds: (1) evidentiary errors deprived him of a fair trial, (2) the prosecution engaged in misconduct, and (3) cumulative error requires reversal. We affirm.

## BACKGROUND

**{2}** The following evidence was presented at Defendant's trial.

**{3}** Defendant was a friend to the parents of the victim, M.G. Defendant and M.G.'s parents periodically lived together in their RV at various locations, including New Mexico and Arizona. M.G. and her older brother, D.G., also periodically lived with their grandmother and her husband at their residence in Alamogordo, New Mexico.

**{4}** M.G.'s grandmother testified that one day in 2016, while spending time with M.G., she disclosed that Defendant "had been touching her in her private spots . . . and that he had been rubbing his pee-pee against her butt and he was touching her with his fingers on her pee-pee."

**{5}** M.G. participated in two forensic interviews, one in 2015, the video recording of which Defendant introduced at trial, and the other in 2016, the video recording of which the State introduced at trial. During the 2016 forensic interview, M.G. stated that Defendant put his "pee-pee in [her] butt," that it "felt bad," and that he "told [her] not to tell." During the same interview, M.G. also stated that her brother engaged in the same behavior as Defendant and that he learned from seeing Defendant do it.

**{6}** Two witnesses, Melanie Gilmore and Cecilia Bernal, provided testimony about what M.G. told them during their professional interviews of her. M.G.'s grandmother, to whom M.G. first disclosed the allegations, also testified. M.G.'s statements during the forensic interview and to her grandmother were descriptive, though her trial testimony varied. Specifically, she initially testified on direct examination that Defendant put his penis "in" her butt; however, on cross examination, she adopted the language of her questioner, agreeing that Defendant put his penis "on" her butt. Additional detail is provided in our analysis as required.

**DISCUSSION**

**I.      Testimony by the Forensic Interviewer Should Have Been Deemed Expert Testimony**

**{7}** Defendant argues that Ms. Gilmore, the forensic interviewer who interviewed M.G. during a 2015 and 2016 forensic interview, was improperly allowed to give expert testimony as a lay witness. During trial, the State asked Ms. Gilmore whether "based upon [her] experience, and training, and education . . . non-disclosure [had] any importance to whether sexual abuse occurred or didn't occur." This question drew an objection from Defendant, who argued that the question called for expert opinion and that Ms. Gilmore was not qualified as an expert. The district court overruled Defendant's objection and pointed to Ms. Gilmore's experience in conducting more than 500 interviews and that the question called for a general answer, not specific to M.G. Thus, the district court determined that Ms. Gilmore was not giving an expert opinion. Ms. Gilmore then testified that children who have been abused "often do not disclose, especially at [M.G.'s] age.

**{8}** The State concedes that the district court incorrectly ruled that Ms. Gilmore's testimony was not an expert opinion. However, the State asserts that "[t]he critical question is whether [Ms.] Gilmore's qualifications were sufficient to permit her to offer her testimony about late disclosures" pursuant to rules governing expert testimony. *See* Rule 11-702 NMRA. The State contends that even though the district court incorrectly allowed Ms. Gilmore to testify as a lay witness, her "training and experience" qualifies her to offer expert testimony; therefore, we should hold that her testimony was correctly admitted although for a different reason.

**{9}** The admission of expert testimony lies within the discretion of the district court. *State v. Downey*, 2008-NMSC-061, ¶ 26, 145 N.M. 232, 195 P.3d 1244. This Court "defers to the [district] court's decision to admit or exclude evidence and will not reverse unless there has been an abuse of discretion." *State v. Martinez*, 2008-NMSC-060, ¶ 10, 145 N.M. 220, 195 P.3d 1232 (internal quotation marks and citation omitted). However, "we review de novo a misapprehension of the law upon which a court bases an otherwise discretionary evidentiary ruling." *State v. Duran*, 2015-NMCA-015, ¶ 11, 343 P.3d 207 (alteration, internal quotation marks, and citation omitted). "[W]e will affirm the [district] court's decision if it was right for any reason so long as it is not unfair to the appellant for us to do so." *State v. Gallegos*, 2007-NMSC-007, ¶ 26, 141 N.M. 185, 152 P.3d 828. While we do not agree with the district court's reasoning for admitting Ms. Gilmore's opinion testimony as a lay witness, we agree that her opinion was admissible, and should have been admitted as expert testimony.

**{10}** Rule 11-702 governs the admission of expert testimony in district court; it provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

Admissibility under Rule 11-702 requires three predicates be met: "(1) that the expert be qualified; (2) that the testimony be of assistance to the trier of fact; and (3) that the expert's testimony be about scientific, technical, or other specialized knowledge with a reliable basis." *Downey*, 2008-NMSC-061, ¶ 25.

**{11}** We have held before that lay testimony—by an experienced forensic interviewer—regarding delayed disclosure by child sexual assault victims is "specialized knowledge within the purview of experts under Rule 11-702[.]" *Duran*, 2015-NMCA-015, ¶ 18 (internal quotation marks omitted). In *Duran*, we reviewed the admissibility of lay testimony regarding behavior of children who allege sexual abuse, and specifically, the delayed reporting of such abuse. *Id.* ¶¶ 11-18. The district court in *Duran* concluded that a forensic interviewer, who conducted between 1400 and 1600 interviews, was not able to provide an expert opinion about delayed disclosure based on her training and experience. *Id.* ¶¶ 5-6. There, the district court concluded that the interviewer's testimony was not an expert opinion, but a lay opinion based on the interviewer's

training and experience. *Id.* ¶ 6. On appeal, we reversed the district court's conclusion that the forensic interviewer provided only lay testimony. *Id.* ¶ 15. We held that lay testimony that includes statements about the behavior of children who allege sexual assault is not "the kind of personal observation that a lay person is capable of making nor common knowledge within the general public." *Id.* Rather, in contrast to the district court's conclusion, we held that such testimony is indeed based on training and experience—factors that are to be considered in evaluating expert testimony.[1] *Id.* ¶ 16.

**{12}** Similarly, here, before offering her opinion as to whether non-disclosure by children indicated whether sexual abuse occurred, Ms. Gilmore testified about her training and experience in her role as a forensic interviewer and her previous positions within law enforcement. She served as a forensic interviewer for four-and-one-half years, received training to conduct different types of child forensic interviews, and as noted above, had conducted "well over 500" forensic interviews in her career as a child forensic evaluator as of the date of Defendant's trial. Further, Ms. Gilmore's testimony revealed that she had acted as a witness on at least five occasions in other court cases regarding forensic interviews, and that she had been associated with child forensic interviewing for approximately ten years, prior to assuming her role with her current employer.

**{13}** Given that Ms. Gilmore offered non-scientific expert testimony based on her training and experience, we must evaluate her "personal knowledge and experience to determine whether [her] conclusions . . . may be trusted." *State v. Torrez*, 2009-NMSC-029, ¶ 21, 146 N.M. 331, 210 P.3d 228. We begin with the fact that Ms. Gilmore's expert opinion was confined to an area in which she had received training and had multiple years of experience. Based on (1) her experience as a forensic interviewer and being familiar with the structure of forensic interviews for many years, and (2) her specialized training in interviewing children using various techniques, we conclude that the district court correctly admitted Ms. Gilmore's testimony, but incorrectly determined that she was offering lay testimony. We affirm the district court, though for different reasons than those on which it rested its evidentiary ruling. *See, e.g., State v. Gallegos*, 2007-NMSC-007, ¶ 26, 141 N.M. 185, 152 P.3d 828 (affirming the district court's admission of evidence as "right for any reason" though the doctrine governing admissibility was not invoked in the district court); *State v. Ruiz*, 2007-NMCA-014, ¶¶ 36-38, 141 N.M. 53, 150 P.3d 1003 (affirming the district court's admission of statements, though it "admitted the statements on a different legal theory").

## II.    The District Court's Admission of Out-of-Court Statements Was Harmless Error

---

[1] Recently, in a case similar to the one at hand, our Supreme Court held that this Court's decision treating the testimony of the state's expert witness as lay testimony was erroneous: "Witness testimony analyzing the behavior of children alleging sexual abuse during [forensic] interviews is specialized knowledge expert testimony under Rule 11-702." *State v. Ochoa*, No. S-1-SC-37092, dec. ¶¶ 3, 24-29 (N.M. Sup. Ct. Jan. 16, 2020) (non-precedential).

**{14}** Defendant argues that "hearsay evidence improperly bolstered and elaborated upon [M.G.]'s testimony." The improper hearsay statements Defendant points to are from: (1) the 2016 forensic interview, (2) M.G.'s grandmother's testimony, and (3) Ms. Bernal's testimony. Defendant asserts that the "hearsay statements introduced allegations and details that were not present in [M.G.]'s courtroom testimony, and they had the effect of repeating and emphasizing [M.G.]'s allegations for the jury."

**{15}** While the State concedes that it was error for the trial court to deem M.G.'s hearsay statements as admissible prior inconsistent statements under Rule 11-801(D)(1)(b) NMRA, the State asserts that the error was harmless. Relying on *State v. Tollardo*, 2012-NMSC-008, ¶ 32, 275 P.3d 110, the State contends that there was "no reasonable probability" that the erroneous admission of M.G.'s out of court statements "contributed to Defendant's conviction." Though we need not accept the State's concession, *State v. Tapia*, 2015-NMCA-048, ¶ 31, 347 P.3d 738, we agree that M.G.'s hearsay statements were improperly admitted, but conclude the error was harmless. "Improperly admitted evidence is not grounds for a new trial unless the error is determined to be harmful." *Tollardo*, 2012-NMSC-008, ¶ 25. "We review improperly admitted evidence for non-constitutional harmless error." *Duran*, 2015-NMCA-015, ¶ 19 (internal quotation marks and citation omitted). A non-constitutional error is harmless "when there is no reasonable *probability* the error affected the verdict." *Tollardo*, 2012-NMSC-008, ¶ 36 (internal quotation marks and citation omitted). "When assessing the probable effect of evidentiary error, [we] should evaluate all of the circumstances surrounding the error." *State v. Serna*, 2013-NMSC-033, ¶ 23, 305 P.3d 936 (internal quotation marks and citation omitted). "This requires an examination of the error itself, which . . . could include an examination of the source of the error and the emphasis placed upon the error." *Tollardo*, 2012-NMSC-008, ¶ 43. "Of course, evidence of a defendant's guilt separate from the error may often be relevant, even necessary, for a[n appellate] court to consider, since it will provide context for understanding how the error arose and what role it may have played in the trial proceedings[.]" *Id.* We may also examine "the importance of the erroneously admitted evidence in the prosecution's case," and "whether the error was cumulative or instead introduced new facts." *Id.* (alterations, internal quotation marks, and citation omitted).

**{16}** Defendant asserts that based solely on M.G.'s testimony, and in the absence of the erroneously admitted hearsay within the testimony of M.G.'s grandmother, Ms. Bernal, as well as the 2016 forensic interview, the jury could have had doubts about whether penetration occurred and could have instead possibly convicted Defendant of criminal sexual contact, a lesser offense. We center our review on the erroneously admitted testimony and consider the forensic interview that was played for the jury.

**{17}** M.G.'s grandmother offered the following testimony, which Defendant complains is particularly damaging hearsay evidence given that M.G. herself did not state in her own testimony at trial. M.G.'s grandmother testified that she and her husband lived in Alamogordo, and at various times M.G. and D.G. lived with them. One day, while she and M.G. were washing dishes, M.G. disclosed to her that "[Defendant] had been touching her in her private spots on her pee-pee, that he had been rubbing his pee-pee

against her butt, and he was touching her with his fingers on her pee-pee." M.G. told her "that [Defendant] was sticking his finger in her pee-pee," and that "[Defendant] would tell [D.G.] what to do, and sometimes he would show [D.G.] what to do as far as touching [M.G.] inappropriately on her pee-pee and her butt and stuff."

{18}     Defendant next directs us to the testimony of Ms. Bernal, a mental health therapist, who received a referral to meet with M.G. in 2016. Ms. Bernal testified that M.G. disclosed to her that Defendant "put his pee-pee inside [her] butt" and that her brother did the same thing. Defendant complains that Ms. Bernal's testimony "alleged anal penetration much more clearly and vividly than [M.G. did] on the witness stand." Defendant does not direct us to any other testimony by Ms. Bernal that created a reasonable probability that her testimony contributed to his conviction.

{19}     Finally, with regard to the hearsay contained in the video recording of the forensic interview, Defendant's argument centers around two specific statements made by M.G. Defendant first points to M.G.'s statement that when Defendant "sticks his pee-pee in [her] butt" "it felt like a car jack." Defendant also points to statements wherein M.G. indicated that D.G. learned to stick things in her from Defendant, and that D.G. was present when Defendant abused her.

| Defense Counsel: | Earlier when you were talking to the jury here, you said that . . . [Defendant] put his pee-pee on your butt? |
| M.G.: | Yes. |
| Defense Counsel: | And then he put his pee-pee on your pee-pee? Is that right? |
| M.G.: | Yes. |
| Defense Counsel: | Ok. And let me just ask, ask you this: . . . when you describe that, . . . does that mean it never went inside? |
| M.G.: | Yes. |
| Defense Counsel: | Just on top? Is that right? |
| M.G.: | Mmhmm. |

{20}     Defendant asserts that collectively, the statements from the testimony of M.G.'s grandmother, Ms. Bernal, and the forensic interview created a reasonable probability that the verdict of the jury was affected. Defendant argues that these statements were used as evidence against him, rather than used to rebut a charge that M.G. had recently fabricated the allegations, rendering them inadmissible hearsay. The State counters that because M.G.'s in-court testimony was specific and compelling independently, so as to cure the defects of the erroneously admitted testimony.

**{21}** Given the importance of M.G.'s testimony in ascertaining whether the testimony that the State concedes was improperly admitted was indeed harmless, we examine it in some detail. M.G. testified on direct examination that Defendant put his pee-pee "*in* [her] butt," that it hurt, and that it made her feel "bad." M.G. also testified that it happened "everywhere," and "a bunch" of times. When M.G. was asked what she did when Defendant put his "pee-pee in [her] pee-pee" and how it made her feel, she testified that it made her feel "bad," that she yelled repeatedly for Defendant to "stop," that he did not stop, and that it made her cry.

**{22}** On cross-examination the jury heard the following colloquy between defense counsel and M.G.:

On redirect, the prosecutor then asked M.G., "When he put his pee-pee *in* your butt, did it feel good or not good[,]" and M.G. replied "not good." The prosecutor also asked, "When he put his pee-pee *in* your pee-pee, how did that make you feel[,]" and M.G. replied "bad."

**{23}** While we do acknowledge the differences between the statements made by M.G.'s grandmother and Ms. Bernal in comparison to M.G., and acknowledge that her in-court testimony was not wholly consistent with her forensic interview, "it is the exclusive province of the jury to resolve the factual inconsistencies in that testimony." *State v. Sena*, 2008-NMSC-053, ¶ 11, 144 N.M. 821, 192 P.3d 1198 (alterations, internal quotation marks, and citation omitted). We conclude that a reasonable jury could have resolved the inconsistencies in M.G.'s testimony to support the result below, and, when placed in the context of Defendant's trial as a whole, the error resulting from the improperly admitted testimony was harmless.

**{24}** Defendant also notes that the hearsay evidence introduced the allegation that Defendant not only abused M.G., but abused D.G. as well, and argues he therefore suffered prejudice from the jury hearing that evidence. To this end, Defendant specifically points to the 2016 forensic interview where M.G. explained that D.G. learned to stick things in her from Defendant and M.G.'s grandmother's testimony that "[Defendant] would tell [D.G.] what to do and sometimes he would show [D.G.] what to do as far as touching [M.G.] inappropriately on her pee-pee and her butt and stuff." With regard to the statements contained in the 2016 forensic interview, we note that Defendant failed to object to its admission—a point he concedes. Defendant further notes that he did not raise any specific objections to the evidence involving D.G. Following the admission of the 2016 forensic interview video recording, Defendant proffered the video recording of M.G.'s 2015 forensic interview, which highlighted M.G.'s statements concerning D.G. touching her sexually. This preceded M.G.'s grandmother's testimony and that of Ms. Bernal. Under this circumstance, we decline to hold that this portion of the erroneously admitted hearsay evidence unduly prejudiced Defendant. *Cf. State v. Carr*, 1981-NMCA-029, ¶ 42, 95 N.M. 755, 626 P.2d 292 (declining to hold that the defendant was prejudiced by witness testimony when defense counsel "first drew attention to . . . and . . . continued to focus attention on" the improper testimony),

*overruled on other grounds as stated in State v. Olguin*, 1994-NMCA-050, ¶ 36, 118 N.M. 91, 879 P.2d 92.

### III.  The Prosecutor Did Not Engage in Misconduct Such That Defendant's Conviction Cannot Stand

**{25}**  Defendant argues that his trial was "marred by prosecutorial misconduct." Defendant challenges the State's introductions of hearsay statements suggesting that he had molested M.G.'s brother, D.G., even though Defendant was not charged with such a crime, and there was "no competent evidence to support the[] allegation[]." Defendant also specifically points to the State's closing arguments where the State referred to D.G. as another victim, implicitly inviting the jury to convict not only for M.G., but for D.G., as well. However, as Defendant concedes, he did not object to the evidence about D.G. during direct examination or the forensic video, nor did he object to the remarks about D.G. in the State's closing arguments.

**{26}**  The State asserts that Defendant himself put D.G.'s sexual abuse squarely at issue when he sought admission of the 2015 forensic interview of M.G., and thereby introduced a defense that D.G. was the abuser, instead of Defendant. The State contends that "[a]lthough [its] repeated mentions of D.G. as another 'victim' in this case may have gone beyond rebutting Defendant's defense, these spontaneous remarks did not introduce evidence outside the record[.]" The State concedes that even though it admitted the 2016 forensic interview, which contained allegations about D.G.'s abuse of M.G., before Defendant admitted his 2015 forensic interview, the State's admission of the 2016 video was in anticipation of, and in response to, Defendant's admission of the 2015 interview.

**{27}**  "When the [district] court had no opportunity to rule on a claim of prosecutorial misconduct because the defendant did not object in a timely manner, we review the claim on appeal for fundamental error." *State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728. "Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *Id.* (internal quotation marks and citation omitted). "[W]e will upset a jury verdict only (1) when guilt is so doubtful as to shock the conscience, or (2) when there has been an error in the process implicating the fundamental integrity of the judicial process." *State v. Sosa*, 2009-NMSC-056, ¶ 35, 147 N.M. 351, 223 P.3d 348. To hold that fundamental error occurred, "we must be convinced that the prosecutor's conduct created a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *Id.* (internal quotation marks and citation omitted).

**{28}**  Even in cases where the defendant fails to object to the prosecutor's statements during trial and we are limited to fundamental error review, we consider "(1) whether the statement invades some distinct constitutional protection; (2) whether the statement is isolate and brief, or repeated and pervasive; and (3) whether the statement is invited by

defense." *Id.* ¶ 26. In doing so, we evaluate the statements "objectively in the context of the prosecutor's broader argument and the trial as a whole." *Id.*

**{29}** Defendant identifies five instances that he believes constituted prosecutorial misconduct. All instances were during closing and rebuttal arguments for the State:

> I know that you didn't sign up for this type of case, and I understand that, but thank you on behalf of both [D.G.] and [M.G.]

> Kids are victimized, and in this case you've heard a lot of things that I'm gonna argue and suggest that, based upon the evidence, shows that [M.G.], and [D.G.], for that matter, are perfect victims.

> [M.G.] told you on the video, [Defendant] told him and showed him how to do it. So, we're talking about two people here, is one realization.

> We have expectations, you may have expectations, but the science doesn't have expectations of injuries.

> By all accounts, in this case, of course you've seen from the video, [D.G.] was shown how to do this by [D]efendant. That infers that D.G. is a victim of sexual abuse. What you didn't hear in this case is what? No injuries to [D.G.] either.

**{30}** We assume without deciding that these statements were improper, and in doing so, remind counsel that a jury should not be directed by the prosecution to convict for reasons other than the evidence presented during trial. *See State v. Cooper*, 2000-NMCA-041, ¶ 15, 129 N.M. 172, 3 P.3d 149; *see also State v. Torres*, 2012-NMSC-016, ¶ 9, 279 P.3d 740. The prosecutor failed to adhere to this principle by making reference to evidence the district court instructed the jury not to consider and referring to D.G. as a victim of sexual abuse by Defendant. As we explain, however, the *Sosa* factors do not weigh in Defendant's favor.

**{31}** First, Defendant concedes that the State's "comments . . . did not invade a specific constitutional protection," and thus the first factor is not at issue. Second, "[a]bsent a constitutional violation, we look at the length and repetition of the comment to determine whether it was so pervasive as to clearly distort the body of evidence before the jury." *Sosa*, 2009-NMSC-056, ¶ 38. Defendant asserts that "[t]he State's references to the alleged abuse of [D.G.] were repeated and deliberate, not brief and isolated, [and] not only during closing argument but throughout [Defendant's] trial." The statements at issue accounted for only a small portion of the prosecutor's closing argument that lasted at approximately twenty minutes and otherwise occurred within a trial that lasted for two days, and went unchallenged by Defendant. Had Defendant lodged an appropriate objection at the relevant time, "[o]ur view might be different." *Id.*; *see also State v. Pennington*, 1993-NMCA-037, ¶ 32, 115 N.M. 372, 851 P.2d 494 (stating that where improper commentary by the prosecution during closing arguments

is alleged, "[t]he proper procedure [is] to object to the statements at the time the prosecutor made them"). Additionally, Defendant has already conceded that he failed to object to references about D.G. made during trial, and as we explain next, many of these statements Defendant complains of were invited by him. *See Sosa*, 2009-NMSC-056, ¶ 33 ("[W]e are least likely to find error where the defense has opened the door to the prosecutor's comments by its own argument or reference to facts not in evidence." (internal quotation marks and citations omitted)). For these reasons, we are unconvinced that this factor weighs heavily in Defendant's favor.

**{32}**    Turning to the third factor, we look to whether the prosecutor's statements were made in response to statements made by Defendant. *See id.* ¶ 39. "Where the defendant opens the door to comments by the prosecutor, such comments are invited and do not constitute reversible error, even if such comments are improper." *State v. Taylor*, 1986-NMCA-011, ¶ 25, 104 N.M. 88, 717 P.2d 64 (internal quotation marks and citation omitted). As discussed above, Defendant introduced the video recording of M.G.'s 2015 forensic interview. By introducing the video, Defendant asserted that it was D.G., and not Defendant, who was sexually abusing M.G. Defendant's strategy to point to D.G. as a perpetrator opened the door to the State recasting D.G., a five-year-old child, as a victim of sexual abuse as a rebuttal to Defendant's theory.

**{33}**    Based on the record before us and when considered against the evidence presented at trial, we cannot conclude that Defendant is "indisputably innocent" and we are satisfied Defendant's conviction is not "fundamentally unfair[.]" *State v. Barber*, 2004-NMSC-019, ¶ 17, 135 N.M. 621, 92 P.3d 633 (providing that fundamental error only occurs in "cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused"). Thus, we conclude that the statements in the State's closing argument that Defendant complains of do not constitute fundamental error.

**IV.    The Admission of Testimony That Defendant Characterizes as Other Acts Evidence Did Not Constitute Fundamental Error and Defendant Has Not Demonstrated Prejudice by Its Admission**

**{34}**    During trial, testimony was admitted that indicated that M.G.'s parents, along with Defendant, lived in poor conditions. Defendant asserts that "[t]his testimony had the effect of painting [him] as a dirty, disreputable person who was a bad influence on children." Defendant contends this testimony constituted "other acts" evidence and should have been barred under Rule 11-404 NMRA. The State responds that the testimony was admitted as "background or context evidence" explaining why the 2015 forensic interview was conducted, and to demonstrate circumstances in which Defendant had the opportunity to assault M.G. The district court allowed the testimony as background evidence and overruled Defendant's objections while warning the State that its latitude in this regard was meager.

**{35}**    Assuming without deciding that the testimony Defendant complains of is "other acts" evidence, because Defendant did not properly preserve an argument under Rule

11-404, we review this claim for fundamental error. *State v. Harrison*, 2000-NMSC-022, ¶ 29, 129 N.M. 328, 7 P.3d 478. "The doctrine of fundamental error is applied only under extraordinary circumstances to prevent the miscarriage of justice" and "if the circumstances implicate a fundamental unfairness within the system that would undermine judicial integrity if left unchecked." *State v. Maestas*, 2007-NMSC-001, ¶ 8, 140 N.M. 836, 149 P.3d 933 (internal quotation marks and citation omitted).

**{36}** Defendant fails to meet this standard. In light of the other evidence presented at trial, including M.G.'s own explicit testimony regarding Defendant's sexual abuse of her, and the nature of the charges at issue, we cannot say that the testimony about unclean living conditions added much, if anything at all, to the weight of the evidence against Defendant. *Cf. State v. Ervin*, 2008-NMCA-016, ¶ 16, 143 N.M. 493, 177 P.3d 1067 (holding that fundamental error did not occur because "there [was] nothing whatsoever shocking about [the d]efendant's conviction" and the testimony complained of did not "add[] much to the evidence against [the d]efendant"). We therefore hold that the admission of the evidence was not fundamental error.

**{37}** Defendant did, however, preserve his objections to this evidence under Rule 11-403 NMRA. We review the admission of evidence under Rule 11-403 for an abuse of discretion. *State v. Martinez*, 1999-NMSC-018, ¶ 31, 127 N.M. 207, 979 P.2d 718. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the [district] court abused its discretion by its ruling unless we can characterize [the ruling] as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). "[A district] court abuses its discretion when it exercises its discretion based on a misunderstanding of the law." *State v. Vigil*, 2014-NMCA-096, ¶ 20, 336 P.3d 380. Under Rule 11-403, the district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Defendant does not identify how the probative value of the testimony about the living conditions is outweighed by the prejudicial effect of said evidence, but merely states that its admission "created unfair prejudice." This is insufficient. *See State v. Malloy*, 2001-NMCA-067, ¶ 21, 131 N.M. 222, 34 P.3d 611 ("Mere assertion of prejudice is not a showing of prejudice."). We therefore hold that the district court did not abuse its discretion by admitting this evidence.

## V.     There Was No Cumulative Error

**{38}** Lastly, Defendant contends that, due to cumulative error, his conviction should be reversed, and he should receive a new trial. "In New Mexico the doctrine of cumulative error is strictly applied." *State v. Sills*, 1998-NMSC-009, ¶ 51, 125 N.M. 66, 957 P.2d 51 (internal quotation marks and citation omitted). "The doctrine of cumulative error applies when multiple errors, which by themselves do not constitute reversible error, are so serious in the aggregate that they cumulatively deprive the defendant of a fair trial." *State v. Roybal*, 2002-NMSC-027, ¶ 33, 132 N.M. 657, 54 P.3d 61. In the present case, we have identified only harmless error, and have otherwise held that the unpreserved issues raised by Defendant do not amount to fundamental error. *See State*

*v. Lente*, 2005-NMCA-111, ¶¶ 10-12, 138 N.M. 312, 119 P.3d 737 (holding that there was no cumulative error when the defendant failed to object to the admission of testimony and its admission was not fundamental error). With only harmless and unpreserved error that we hold is not fundamental, we are unconvinced that the record, in the aggregate, demonstrates that Defendant's trial was unfair. *See State v. Trujillo*, 2002-NMSC-005, ¶ 63, 131 N.M. 709, 42 P.3d 814 (noting that the doctrine of cumulative error "cannot be invoked when the record as a whole demonstrates that the defendant received a fair trial" (internal quotation marks and citation omitted)); *see also Allen*, 2000-NMSC-002, ¶ 117 ("We have noted on several occasions that a fair trial is not necessarily a perfect trial."). Thus, we reject Defendant's claim of cumulative error.

**CONCLUSION**

**{39}** For the foregoing reasons, we affirm Defendant's convictions.

**{40}** **IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**